UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X   Case No.:
ANDRA KORAJKIC,

                                    Plaintiff,      **COMPLAINT**

      -against-

SOBO & SOBO LLP and RAYMOND J. IAIA,      **PLAINTIFF DEMANDS**
*in his individual and official capacities*,      **A TRIAL BY JURY**

                                   Defendants.
---------------------------------------------------------------X

      Plaintiff ANDRA KORAJKIC ("Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES PLLC, hereby complains of the Defendants SOBO & SOBO LLP and RAYMOND J. IAIA as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the New York State Human Rights Law, New York State Executive Law §§ 296 *et. seq.* ("NYSHRL"), and seek damages to redress the injuries she has suffered as a result of being discriminated against, sexually harassed, subjected to a hostile work environment, and retaliated against on the basis of sex/gender (female).

2. Plaintiff was employed by Defendant SOBO & SOBO from October 2017 through October 18, 2019.

3. Starting in or around November/December 2018, Plaintiff began experiencing a work environment that continuously exposed her to sexually explicit pornographic photographs and videos made by Defendant IAIA. These pornographic images and videos were mostly depicting Defendant IAIA engaging in sexual acts with a female individual.

1

4. Despite repeated complaints by Plaintiff and other employees to various upper management employees, including but not limited to the Managing Partner, Gregory Sobo, nothing was done to protect Plaintiff and other female employees of Defendant SOBO & SOBO LLP from the sexually severe and pervasive hostile work environment caused by Defendant IAIA.

5. By improperly and untimely responding to Plaintiff's complaints and by retaliating against Plaintiff after she complained, Defendant SOBO & SOBO LLP condoned, ratified, supported, and furthered the sexually and gender-based hostile work environment.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

6. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

7. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under State law pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York or the acts complained of occurred therein.

9. By: (a) timely filing a Charge of Discrimination with Equal Employment Opportunity Commission ("EEOC") on November 26, 2019; (b) receiving a Notice of Right to Sue from the EEOC on March 13, 2020; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied all procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as **Exhibit A**.

## PARTIES

10. At all relevant times, Plaintiff ANDRA KORAJKIC ("Plaintiff") was and is a female and a resident of the State of New York and the County of Duchess.

11. Upon information and belief, Defendant SOBO & SOBO LLP ("SOBO & SOBO") was and is a domestic registered limited liability partnership, duly existing pursuant to, and by virtue of, the laws of the State of New York with a principal place of business located at 1 Dolson Avenue, Middletown, New York 10940 (the "Middletown – Dolson Office").

12. Upon information and belief, Defendant SOBO & SOBO owns and/or operates at least eight (8) law office locations throughout the State of New York, including but not limited to offices located in Middletown, Monticello, New York City, Newburgh, Poughkeepsie, Spring Valley, and the Bronx.

13. In addition, upon information and belief, Defendant SOBO & SOBO owns and/or operates the Poughkeepsie Office located at 219 Church Street, Poughkeepsie, New York 12601, where the discriminatory conduct took place (the "Poughkeepsie Office").

14. Upon information and belief, Defendant SOBO & SOBO employs fifteen (15) or more employees.

15. At all relevant times, Defendant RAYMOND J. IAIA ("IAIA") was employed by Defendant SOBO & SOBO as a "Supervising Attorney."

16. At all relevant times, Defendant IAIA was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant IAIA had the authority to hire, fire, and/or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

17. Defendants SOBO & SOBO and IAIA are collectively referred to as "Defendants."

## MATERIAL FACTS

18. On or about October 18, 2017, Defendant SOBO & SOBO hired Plaintiff as an "Associate Attorney."

19. Starting in or around November/December 2018, Plaintiff began observing sexually explicit photographs of women on Defendant IAIA's computer whenever she would pass by Defendant IAIA's office, which made Plaintiff feel extremely uncomfortable.

20. A number of these sexually explicit images were of Defendant IAIA engaging in sexual acts. Defendant IAIA consistently left his office door wide open and his computer screen was visible to anyone passing by his office.

21. On some of these occasions, Plaintiff would notice that Defendant IAIA would minimize those photos when he realized that someone was behind him by using a small mirror he kept on his desk.

22. As a means to avoid seeing these sexually explicit and offensive photographs, Plaintiff would call out Defendant IAIA's name before she reached his office so that he could have time to minimize the pornographic images before she had to enter his office.

23. From time to time, Defendant IAIA would also walk throughout the office with his pants zipper down.

24. On a number of these occasions, Defendant IAIA's underwear was visible, which made Plaintiff feel extremely uncomfortable.

25. On or about May 20, 2019, Mike Wolff ("Mr. Wolff") was promoted to "Partner" at Defendant SOBO & SOBO.

26. On or about May 29, 2019, there was an officewide celebration for Mr. Wolff's promotion.

27. During this event, Molly Finnigan ("Ms. Finnigan"), a Paralegal at Defendant SOBO & SOBO, told Plaintiff that she had also observed Defendant IAIA viewing the sexually explicit photographs on his computer.

28. Brenda Davis-Bush ("Ms. Davis-Bush"), a Supervisory Paralegal at Defendant SOBO & SOBO, Elisa Bonini ("Ms. Bonini"), a Receptionist at Defendant SOBO & SOBO, and Julianna O'Grady ("Ms. O'Grady"), an Associate Attorney at Defendant SOBO & SOBO, were also present during this conversation.

29. All the women confirmed that they had observed Defendant IAIA viewing the sexually explicit images on his computer, during business hours.

30. However, Ms. Davis-Bush offensively told Plaintiff and the other female employees that "boys will be boys" and "at least he gets his work done."

31. On or about June 9, 2019, Carole Orapello ("Ms. Orapello"), an Administrative Director for Defendant SOBO & SOBO, emailed the employees of Defendant SOBO & SOBO, about a mandatory sexual harassment meeting for all employees.

32. On or about June 13, 2019, Defendant SOBO & SOBO conducted a mandatory sexual harassment meeting.

33. However, soon thereafter, Defendant IAIA's conduct became even more pervasive as it became an almost daily occurrence that he was openly viewing pornographic images and videos on his computer in plain sight for everyone passing by his office to see.

34. On or about July 10, 2019, Plaintiff complained to Gregory Sobo ("Mr. Sobo"), the Managing Partner at Defendant SOBO & SOBO, about Defendant IAIA constantly and openly watching pornographic materials on his work computer, during business hours.

35. Mr. Sobo appeared shocked and asked whether or not anyone else was aware.

5

36. Plaintiff responded that many employees including other supervising attorneys were aware of Defendant IAIA's inappropriate conduct.

37. Plaintiff continued that she knew that Ms. Finnigan had already complained to her supervisor, Ms. Davis-Bush, and that Ms. Bonini was also aware of Defendant IAIA's inappropriate conduct.

38. Mr. Sobo assured Plaintiff that everything would be taken care of within five days and that Plaintiff could assure the other employees that there would be a resolution.

39. Plaintiff asked if there would be corrective action taken against Defendant IAIA.

40. Mr. Sobo responded that Edward Shankar ("Mr. Shankar"), an IT employee of Defendant SOBO & SOBO, would do a sweep of Defendant IAIA's computer and that he would take the complaint to Ms. Orapello and then address the complaint with Defendant IAIA.

41. Thereafter, from on or about July 10, 2019 to on or about August 14, 2019, Plaintiff received no update about the investigation into Defendant IAIA's inappropriate conduct.

42. Plaintiff noticed that Mr. Sobo did not come into the Poughkeepsie Office until on or about August 14, 2019.

43. Soon thereafter, Plaintiff, Ms. O'Grady, Ms. Bonini, and Patricia Perez ("Ms. Perez"), an Associate Attorney at Defendant SOBO & SOBO, complained to Mr. Sobo about Defendant IAIA's ***continued*** sexually inappropriate conduct in the office.

44. During this meeting, Plaintiff reiterated her complaints from her prior meeting with Mr. Sobo about Defendant IAIA watching sexual content during business hours and stated that it had continued.

45. Plaintiff continued to complain that the work environment had become even more uncomfortable and hostile since her initial complaint and that Defendant IAIA appeared to be attempting to sabotage Plaintiff's career.

6

46. Mr. Sobo responded that Mr. Shankar had done a sweep of Defendant IAIA's computer and found no pornographic images.

47. Mr. Sobo continued that he took the complaint to Ms. Orapello. However, Ms. Orapello stated that if she took Plaintiff's complaints to Defendant IAIA and he denied the allegations, what would they (Defendant SOBO & SOBO) do then?

48. The women all advised Mr. Sobo that Defendant IAIA was watching the sexually explicit videos and photographs on his Gmail account, so it would not be found on the Defendant SOBO & SOBO's server.

49. In addition, despite the employees stating that they had proof of Defendant IAIA's inappropriate conduct, Mr. Sobo refused to view the proof and fully investigate Plaintiff's and the other female employees' complaints.

50. Mr. Sobo then said that he would talk to Ms. Orapello again about the complaints and address the situation with Defendant IAIA, without mentioning anyone's names, but if Defendant IAIA denied it, he would have to disclose their names.

51. Plaintiff, and upon information and belief, the other female employees, agreed to this action plan.

52. Mr. Sobo offensively ended the meeting by stating, "Ray is a great attorney, even if he does not know how to lead," referring to Defendant IAIA.

53. Mr. Sobo's comment indicated his acquiecense to Defendant IAIA's unlawful conduct.

54. Later that evening, Plaintiff received a text message from Defendant IAIA apologizing for his conduct and stating:

> I am sorry that I've put each of you and the office in an awful position. I am embarrassed that my personal life has been exposed in this way and brought into the office. I hope it is clear that whatever was seen was unintentional as I never meant for my personal life to be brought into work.

7

> I would like to come in tomorrow so I can apologize to you all personally. It is important to me that you know I am not an adulterer in the way that is commonly understood. Everything my wife and I do is done with our full knowledge, consent, and blessing. We will be married half our lives in October and we are more in love than at any other point in our marriage. We raise and love four children, but do not share the details of our marriage with them. I've got a long night ahead, you're welcome to respond as a group or to me privately. I have already apologized to Brenda, Greg, and Mike. I don't believe I have the cell numbers of the others in the office but anyone else that is owed an apology will get one of course. If you are uncomfortable with me being in the office tomorrow please let me know, privately or group is ok.

55. On or about August 15, 2019, Ms. Davis-Bush held a meeting with Plaintiff and told her that Mr. Sobo disclosed to Defendant IAIA the names of the employees that had complained about his conduct.

56. Ms. Davis-Bush continued that "it [was] [Defendant IAIA's] personal life" and that the complainants should not tell anyone about what is going on in the Poughkeepsie Office.

57. Later that day, Defendant IAIA made an insincere public apology to the Poughkeepsie Office.

58. Defendant IAIA stated that he had an open marriage with his wife for the past five years and that the employees should not pity his wife nor mention anything about the explicit videos to her if she visited the office.

59. On or about August 15, 2019, Ms. Orapello called Plaintiff and Ms. Bonini to ask them about Defendant IAIA's apology.

60. Plaintiff advised Ms. Orapello that she found the apology insincere because Defendant IAIA did not take accountability for his actions and that she found the investigation into the complaint to have been poorly handled.

8

61. For example, Plaintiff said that Mr. Sobo should not have said that Defendant IAIA was a great attorney. Plaintiff also said that Ms. Davis-Bush should not have said that the investigation was a "witch hunt" or that "boys will be boys."

62. Plaintiff continued that the fact that Jared Bernacchia and Rose Thorma, two paralegals, went to apologize to Defendant IAIA, made Plaintiff believe that the victims were led to believe that they were the perpetrators and that the perpetrator was the victim.

63. On or about August 16, 2019, Ms. Orapello emailed Plaintiff stating, "I appreciate the time you took to discuss your concerns with us. Please note we have addressed the situation and I am confident there will be no further incidents."

64. Plaintiff responded by asking how the situation was addressed.

65. However, Ms. Orapello replied, "Due to confidentiality reasons, I cannot provide details but have no doubt the issues you raised will not occur again."

66. On or about August 21, 2019, Plaintiff had a meeting with Mr. Sobo and Ms. Perez about the investigation.

67. Ms. Perez said that there should have been an email from Human Resources stating that what Defendant IAIA did was wrong and should not have occurred. However, no such email was ever sent.

68. Mr. Sobo told Ms. Perez and Plaintiff that they should take it to Ms. Orapello since she was "Human Resources."

69. On or about August 26, 2019, Defendant IAIA began chastising Plaintiff due to her refusal to sign a Summons and Complaint, which she believed contained fraudulent claims.

70. Upon information and belief, Defendant IAIA was attempting to paint Plaintiff as a combative employee, who refused to do as she was told.

71. In or around late August 2019/early September 2019, Defendant IAIA began behaving in an odd manner, including walking around the office with no shoes on, appearing disheveled, yelling at employees, slamming doors, and swearing throughout the office.

72. On or about September 5, 2019, Defendant IAIA appeared on one of Plaintiff's cases and agreed to do a deposition for the Defendant within a few days, and did not confirm the date with Plaintiff.

73. Upon information and belief, Defendant IAIA was attempting to sabotage Plaintiff's workload, so that she would be viewed as an ill-prepared employee.

74. On or about September 9, 2019, Defendant IAIA brought the woman depicted on the pornographic pictures/videos to the Poughkeepsie office and was later seen kissing her in the parking lot of Defendant SOBO & SOBO.

75. On or about September 11, 2019, Defendant IAIA told Plaintiff that she should be following up with phone calls if she does not get an immediate response from opposing counsel on one of her cases.

76. Later that day, Defendant IAIA sent Plaintiff an email attempting to paint Plaintiff in a negative light and insinuate that she was not good at her job.

77. Also, on or about September 11, 2019, Plaintiff learned that Defendant IAIA brought his wife to work and kissed her in front of Ms. Finnigan and Ms. Bonini.

78. Plaintiff later learned that Ms. Finnigan and Ms. Bonini, complained to Ms. Orapello about Defendant IAIA's continued inappropriate conduct of watching pornographic images.

79. On or about September 16, 2019, the Poughkeepsie Office employees received an email from Mr. Wolff stating:

> In an ever growing firm such as ours, change is inevitable. That is why effective Monday September 23, Ray, who is needed in the Middletown office, will be taking on a new role, and Courtney will assume the role of Attorney Manager of the Poughkeepsie office. Courtney will be responsible for the office as a whole and will directly supervise the attorneys in that office.
>
> As a reminder, cases are not to be settled without her authority (for both settlement demands and final values), and our core values will remain our guiding force.

80. On or about September 23, 2019, Courtney Campbell ("Ms. Campbell"), a Supervising Attorney at Defendant SOBO & SOBO, began her new role in the Poughkeepsie Office and Defendant IAIA moved from the Poughkeepsie Office to the Middletown-Dolson Office.

81. On or about October 14, 2019, Plaintiff emailed Ms. Orapello and Ms. Campbell explaining that due to Defendant SOBO & SOBO's poor response to Plaintiff's complaints, she was being forced to resign from her position.

82. Defendants thereby constructively terminated Plaintiff.

83. Defendants created a sexually hostile working environment that no reasonable person would tolerate.

84. **Plaintiff was treated differently by Defendants solely due to her sex/gender (female)**.

85. But for the fact that Plaintiff is female, Defendants would not have treated her differently.

86. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

87. The above are just some of the ways Defendants discriminated and retaliated against Plaintiff while employing her.

88. Defendant SOBO & SOBO had knowledge of and/or acquiesced in the discrimination and/or harassment by Defendant IAIA.

11

89. Upon information and belief, Defendant IAIA also made sexual advances on a female employee of Defendant SOBO & SOBO. When the Managing Partner, Gregory Sobo, was eventually made aware of this inappropriate conduct no action was taken to prevent Defendant IAIA from sexually harassing Defendant SOBO & SOBO's employees.

90. Plaintiff's performances were, upon information and belief, exemplary during the course of her employment with Defendant SOBO & SOBO.

91. Plaintiff has been unlawfully discriminated against, retaliated against, humiliated, degraded and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, and earnings.

92. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff has suffered severe emotional distress.

93. As a result of the acts and conduct complained of herein, Plaintiff has suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

94. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

95. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

96. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

97. This claim is authorized and instituted pursuant to the provisions of Title VII, for relief based upon the unlawful employment practices of Defendant SOBO & SOBO.

98. Plaintiff complains of Defendant SOBO & SOBO's violation of Title VII's prohibition against discrimination in employment-based, in whole or in part, upon an employee's sex/gender (female).

99. Defendant SOBO & SOBO engaged in unlawful employment practices prohibited by Title VII, by discriminating against Plaintiff because of her sex/gender (female/sexual harassment).

**AS A SECOND CAUSE OF ACTION
RETALIATION UNDER TITLE VII
(Not Against Individual Defendant)**

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

101. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

102. Defendant SOBO & SOBO engaged in unlawful employment practice prohibited by Title VII. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to its unlawful employment practices.

**AS A THIRD CAUSE OF ACTION
DISCRIMINATION UNDER THE NYSHRL**

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

104. Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's … **sex** …

13

>      to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

105. Defendants violated this section by discriminating against Plaintiff because of her sex/gender (female/sexual harassment).

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

107. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

108. Defendants violated this section by retaliating against Plaintiff because of her opposition to the unlawful employment practices of the Defendants.

## JURY DEMAND

109. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII and the NYSHRL in that Defendants discriminated and retaliated against Plaintiff on the basis of her sex/gender;

B.   Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain and suffering, and injury to her reputation in an amount to be proven;

C.   Awarding Plaintiff punitive damages;

D.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
April 2, 2020

                                       **PHILLIPS & ASSOCIATES,**
                                       **Attorneys at Law, PLLC**

By: _____
      Brittany A. Stevens, Esq.
      Katerina Housos, Esq.
      *Attorneys for Plaintiff*
      45 Broadway, Suite 620
      New York, New York 10006
      T: (212) 248-7431
      F: (212) 901 - 2107
      bstevens@tpglaws.com
      khousos@tpglaws.com